**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

COLIN BRULEY,

        Plaintiff,

vs.                                                                        Case No. 3:07-cv-1083-J-32JRK

VILLAGE GREEN MANAGEMENT
COMPANY, a foreign corporation,
LBK LP, a foreign limited partnership
d/b/a THE OAKS AT MILL CREEK
APARTMENTS, TR MILL CREEK
CORPORATION, a foreign corporation
d/b/a THE OAKS AT MILL CREEK
APARTMENTS,

        Defendants.

## ORDER

This case is before the Court on defendants' motion for summary judgment (Doc. 19) and exhibits thereto. (Doc. 20.) Plaintiff has filed a response in opposition. (Doc. 22.) On July 31, 2008 the Court held a hearing on the motion (Doc. 29), the record of which is incorporated by reference.

**I.    Background**

This case arises from defendant Village Green Management Company's ("Village Green") termination from employment of plaintiff Colin Bruley ("Bruley"). Village Green is a Michigan-based apartment community management company

which managed The Oaks at Mill Creek Apartments ("The Oaks"), a complex in Jacksonville, Florida owned by defendant TR Mill Creek Corporation ("TR Mill Creek").[1]  (Doc. 5 at 2 (plaintiff's complaint).)  In 2005, Village Green hired Bruley as a leasing agent for one of its Michigan properties.  In December 2006, Village Green transferred Bruley to The Oaks in Jacksonville, where his duties included renting apartments, giving tours to prospective residents, and performing general office tasks.  Bruley, who lived in an apartment on the premises, had a good record while employed.

Village Green gave employees notice of its emergency policies and procedures via its Associate Handbook, which mandated employees "[i]mmediately report any accidents which occur while on the job to [their] supervisor" and that "[a]ll incidents of violence must be reported to and acted upon by management."  (Doc. 20-6 (Handbook at 53-54).)  Similarly, the Handbook defined as prohibited employee conduct, "[c]arrying concealed weapons or explosives or violating criminal laws on Company premises or elsewhere when on Company business."  (Id. at 51.)  In April 2007 Melissa Joy, Village Green's Senior Area Director, reminded employees of proper emergency procedures.  (Doc. 20-7.)  Bruley was trained in Village Green's emergency procedures, (Doc. 20-3 at 22 (Bruley Dep. at 79-80)), and on April 4,

---

[1] On November 16, 2007, plaintiff's claim against The Oaks' property owner, LBK, LP, was dismissed.  (Doc. 1-2 at 7 (Notice of Dropping Party).)

2005, Bruley had signed a form acknowledging receipt of Village Green's Associate Handbook; the form expressly acknowledged Bruley was terminable at-will, stating "either [Bruley] or the Company (or any of its related entities) may terminate [the] employment, with or without cause, and with or without notice at any time." (Doc. 20-12.)

In the early hours of June 12, 2007, while lying on his couch, Bruley heard an argument elsewhere in the complex. (Doc. 20-3 at 28  (Bruley Dep. at 103).) Around 2:00 a.m., Bruley heard "a desperate cry and a desperate need for help," as someone yelled "I've been shot," as if "fighting for their life or pleading for their life." (Id. at 105-06.) Alarmed, Bruley grabbed his shotgun and one shell and loaded and cocked the gun. (Id.)  He left his apartment and walked quickly to the commotion where the victim, Tonetta Lee, lay bleeding from her leg. (Id. at 131-33.)  At the time, Bruley did not know the shooter's identity or whether the shooter remained in the area. (Id.)  He handed his shotgun to a neighbor and tended to Lee. (Id. at 139-140.)  Improvising, Bruley used a blanket and a belt to stop the bleeding and tried to calm Lee until the ambulance arrived. (Doc. 20-8.)  After speaking with police, Bruley returned to his unit, showered, and collapsed in exhaustion. (Doc. 20-3 at 39 (Bruley Dep. at 146).)

Around 10:00 a.m. the same morning, a telephone call from a Village Green management representative awoke Bruley and he was ordered to report to the management office (id.); soon after, Stephanie Stansfield, The Oaks' property

manager, interviewed Bruley and typed Bruley's account of the incident, which he signed.  (Id. at 83-86.)   Later that afternoon, Bruley met with management representatives; he was fired.  (Doc. 20-2 at 15 (Quay Dep. at 53).)

According to Village Green, Bruley was fired for: (1) failure to contact authorities, (2) failure to inform any Village Green representative or emergency contact of the incident, and (3) having a firearm on the property.  (Id.)  A human resources report stated Bruley "demonstrated extremely poor judgment in responding to [the] situation" and failed to contact the proper authorities after the incident.  (Doc. 20-9.) On or about June 18, Bruley was evicted from Village Green for non-payment of rent and discussing the incident with the media.  (Doc. 20-2 at 15 (Quay Dep. at 52).)  Bruley claimed he was fired and evicted for "his exercise of his right to bear arms," (Doc. 5 at 6), but admitted he did not pay his overdue rent to Village Green until after he was fired.  (Doc. 20-3 at 11 (Bruley Dep. at 36-37).)   Bruley also admitted he spoke to a reporter from the Florida Times-Union a few days after the incident.  (Id. at 164-65.)

Bruley filed a one-count amended complaint against Village Green and TR Mill Creek alleging he was wrongfully discharged from employment, in violation of public policy, specifically protection of his right to bear arms in self defense.  (Doc. 5.) Village Green moved for summary judgment (Doc. 19) with evidentiary support for its position.  (Doc. 20.)  Bruley has filed a response in opposition (Doc. 22) and a notice

4

of supplemental authority. (Doc. 25.) Village Green's request to file a response to Bruley's response in opposition (Doc. 24) was denied. (Doc. 28.)

## II. **Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on motions for summary judgment, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "The burden of demonstrating the satisfaction of [the summary judgment] standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## III. **Discussion**

Under Florida's established rule for termination of at-will employment, "'where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for

breach of the employment contract.'" DeMarco v. Publix Supermarkets, Inc., 384 So. 2d 1253, 1254 (Fla. 1980)(quoting DeMarco v. Publix Supermarkets, Inc., 360 So. 2d 134, 136 (Fla. 3d DCA 1978)).  While some jurisdictions recognize exceptions to this rule, "Florida law . . . provides no action for the common law tort of wrongful termination."  Rosensweig v. Morgan Stanley & Co., Inc., 494 F.3d 1328, 1335 (11th Cir. 2007).  Contrary to Bruley's arguments, Florida has no exception even where termination is founded on an employee's exercise of constitutional rights.  See DeMarco, 384 So. 2d at 1254 (adopting district court's conclusion that employer was not liable for firing employee based on employee's exercise of his rights under the Florida Constitution).  Thus, to bring a non-contract claim for wrongful discharge in Florida, an employee must rely on statutory causes of action created by the Legislature.[2]  Hartley v. Ocean Reef Club, Inc., 476 So. 2d 1327, 1330 (Fla. 3d DCA 1985).  Here, no statutory cause of action for wrongful discharge applies to these facts, so Bruley cannot seek relief through that avenue.

It is true that several jurisdictions recognize an exception to at-will termination via a tort for retaliatory or wrongful discharge where the discharge contravenes public

---

[2] See, e.g., Fla. Stat. § 440.205 (2007) (for discharge in retaliation to filing a worker's compensation claim); Fla. Stat. § 40.271 (2007) (for discharge because of service on a jury); Fla. Stat. § 112.042 (2007) (for discharge or discrimination by county or municipal employer on basis of race, color, sex, religious creed or national origin).  Federal laws such as Title VII also provide a cause of action in some circumstances, but not here.

policy. See, e.g. Sheets v. Teddy's Frosted Foods, Inc., 427 A.2d 385, 388-89 (Conn. 1980) (recognizing a claim for wrongful discharge in violation of public policy where plaintiff was fired for insisting his employer comply with FDA requirements); Martin Marietta Corp. v. Lorenz, 823 P.2d 100, 108 (Colo. 1992) (recognizing cause of action under public policy exception to at-will termination doctrine where employee refused to report falsely to his superior the safety and quality of a machine); Palmateer v. Int'l Harvester Co., 421 N.E.2d 876 (Ill. 1981)(holding employee has cause of action for retaliatory discharge in contravention of public policy where employee was fired for reporting fellow employee's alleged criminal activities to local law enforcement). However, Florida does not have such a public policy exception. Hartley, 476 So. 2d at 1327; Smith v. Piezo Tech. & Professional Adm'rs, 427 So. 2d 182, 184 (Fla. 1983); Segal v. Arrow Industries Corp., 364 So. 2d 89, 90 (Fla. 3d DCA 1978). Florida courts have refused to create a public policy exception because "[t]he determination of what constitutes public policy, or which of competing public policies should be given precedence, is a function of the legislature." Hartley, 476 So. 2d at 1329. Id. Thus, "if the rule of non-liability for termination of at-will employment is to be tempered, it should be accomplished through a principled statutory scheme, adopted after opportunity for public ventilation, rather than in consequence of judicial

resolution of the partisan arguments of individual adversarial litigants." Id. at 1330.[3]

As confirmed by Village Green's Associate Handbook, Bruley was terminable at will by Village Green. (Doc. 20-12.) Following the incident, Village Green terminated Bruley citing several reasons.[4] (Doc. 20-2 at 15 (Quay Dep. at 53).) Bruley does not claim he was terminated for discriminatory or statutorily prohibited reasons. Rather, Bruley claims Village Green fired him for reasons contrary to public policy. (Doc. 5 at 6; Doc. 22 at 7-16.) Bruley argues Village Green's termination of

---

[3]  At oral argument and in his opposition to the summary judgment motion, Bruley relied heavily on the case Feliciano v. 7-Eleven, Inc., 559 S.E.2d 713, 723 (W.Va. 2001), in which the Supreme Court of West Virginia held an at-will employee stated a cause of action for wrongful discharge in violation of public policy when his employer terminated him for disarming an armed assailant during an in-store robbery. The Feliciano court began its analysis with an earlier state case which recognized that a West Virginia employee has a fundamental right not to be a victim of retaliatory discharge where the employer's motivation for termination contravenes a "substantial public policy." Id. at 718. The court reviewed prior state self-defense cases at length and concluded that "the right of self-defense in response to lethal imminent danger is a substantial public policy exception to the at will employment doctrine and will support a cause of action for wrongful discharge." Id. at 723-34. However, Feliciano is distinguishable because the court relied on West Virginia case law establishing a general public policy exception to the at-will employment doctrine. Florida has no such exception and thus this Court, applying Florida law, has no basis on which to countenance a cause of action based on the circumstances here. Moreover, it is not even clear that the public policy exception in Feliciano based on "self defense in response to lethal imminent danger" would be applicable to these facts.

[4]  Village Green gave two other reasons for terminating Bruley: his failure to contact authorities and his failure to inform any company representative or emergency contact of the incident. (Doc. 20-2 at 15 (Quay Dep. at 53).) While both reasons support Village Green's termination of Bruley under the at-will employment doctrine, for purposes of this Order, the Court will assume Bruley was fired for the third reason given, having a firearm on the employer's property.

him violated his constitutional right to bear arms in self-defense, conferred by article I, section 8(a) of the Florida Constitution and Florida Statutes sections 776.012 and 776.103.  (Doc. 5 at 5-6.)  Assuming arguendo that these provisions give Bruley the right to bear arms in certain situations, he cannot rely on them as the basis for a public policy exception to Florida's at-will termination rule.  Because Florida does not recognize a public policy exception, Hartley, 476 So. 2d at 1327, and because the Florida statutes do not provide a cause of action for wrongful discharge based on the facts here, Bruley's cause of action fails.

Bruley also relies on a recently passed law as indicative of the import the Florida Legislature places on armed self defense.  (Doc. 22 at 10.)  Formally titled "The Preservation and Protection of the Right to Keep and Bear Arms in Motor Vehicles Act of 2008," the statute prohibits employers from precluding employees from bringing guns to work, provided employees have valid permits and keep the guns stored in their vehicles.  See Fla. Stat. § 790.251 (2008).

Bruley's reliance on the new statute is misplaced: first, the statute only creates an exception to at-will employment to prevent an employer from firing an employee for possessing a firearm *in the employee's car* while on company property.  Id.  Bruley carried his firearm across company property; it was not stored in his car.[5]  Thus, the

---

[5] Neither did Bruley have a "valid license" to carry a concealed firearm as required for him to be an "employee" under the new statute.

scenario covered by the statute is inapplicable here.[6]  Further, the statute was enacted over a year after Bruley was fired and does not apply retroactively, so Bruley cannot rely on the statute for a cause of action.  Id.  Finally, the Legislature's failure to address Bruley's precise circumstances, after having statutorily addressed similar scenarios, evidences a strong intent not to create the exception for which Bruley argues.  The Legislature had the opportunity to create such an exception when it enacted the new statute and chose not to do so, making clear Florida has no general "right to bear arms on employer property" exception to at-will discharge.

Bruley argues Florida's public policy regarding self-defense has changed since DeMarco was decided, citing post-DeMarco civil statutes creating various causes of action for wrongful discharge.[7]  Though he shows a pattern of change, Bruley cannot create a public policy exception where Florida law does not provide one.  Hartley, 476 So. 2d at 1327.  It is precisely because the Legislature has not seen fit to create a

---

[6] This is further confirmed by the Court's preliminary injunction opinion in Florida Retail Federation, Inc. v. Attorney General of Florida, 576 F. Supp.2d 1281, 1295-96 (N.D. Fla. 2008), construing this statute to only apply to guns secured in a vehicle in a parking lot by an employee with a concealed weapons permit.  The Court also spoke in language potentially applicable here: "there is no constitutional right to bear arms on private property against the owner's wishes."  Id. at 1295.  A permanent injunction was subsequently entered. 576 F. Supp.2d 1301 (N.D. Fla, 2008).

[7] Bruley cites broadly and with little explanation to Section 790, Florida Statutes (permitting individuals to carry licensed, concealed firearms), and Section 776, Florida Statutes ("Castle Doctrine" within the "Justifiable Use of Force" statutes). (Doc. 22 at 10.)

cause of action for Bruley in these circumstances that he does not have one. Public policy issues are best left to the legislature, which "has infinitely greater resources and procedural means to discern the public will, to examine the variety of pertinent considerations, to elicit the views of the various segments of the community that would be directly affected and in any event critically interested, and to investigate and anticipate the impact of imposition of such liability." Id. at 1329-30.

Bruley supplemented his response in opposition to defendants' motion for summary judgment with the recent Supreme Court decision in District of Columbia v. Heller, 128 S.C. 2783 (2008). In Heller, the Court held the Second Amendment conferred an individual right to keep and bear arms in certain circumstances, and overturned as unconstitutional a gun-control ordinance that banned handgun possession in the home, even for self-defense. Id. at 2799, 2816-17, 2822. While Heller evinced a constitutional imperative for permitting defense of "the home, where the need for defense of self, family and property is most acute" id. at 2817, the Court did not address an employee's right to possess a firearm at a private employer's workplace. Thus, whatever Second Amendment right Bruley may have to possess a firearm in his apartment,[8] it cannot be stretched to create a wrongful discharge cause of action under Florida law against a private employer which fires an employee

---

[8]   Village Green said it took no issue with Bruley's possession of his firearm in his apartment. However, during the incident in question, Bruley took the shotgun from his apartment and onto the employer's common grounds.

for carrying a firearm on company property.  Moreover, there is no state action involved.  See Florida Retail Federation, Inc., 576 F. Supp.2d at 1295 ("the constitutional right to bear arms restricts the actions of only . . . *governments* . . . , not private actors")(emphasis in original); see also Shelley v. Kraemer, 334 U.S. 1, 13 (1948) (requiring state action for claimed Fourteenth Amendment violations); O'Dell v. Doychak, No. 606-CV-677-ORL-19KRS, 2006 WL 4509634, at *3 (M.D. Fla. Oct. 20, 2006) (requiring state action for claimed due process and basic rights violations under the Florida Constitution); Schreiner v. McKenzie Tank Lines, Inc., 432 So. 2d 567, 569 (Fla. 1983) (requiring state action for claimed basic rights violations under the Florida Constitution).

Thus, while Bruley's actions in saving the shooting victim are commendable and defendants' action in summarily firing him seems an overreaction, his termination does not give rise to a cause of action because Florida law does not recognize an exception to at-will termination based on the circumstances here.  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Uhl v. Swanstrom, 79 F.3d 751, 754 (8th Cir. 1996).  As a matter of Florida law, Bruley has no cause of action.

**IV.     Conclusion**

Accordingly, it is hereby

**ORDERED**:

Defendants' Motion For Summary Judgment (Doc. 19) is **GRANTED**.  The Clerk should enter judgment for Defendants Village Green Management Company and TR Mill Creek Corporation and against Plaintiff Colin Bruley, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of December, 2008.

*[signature]*
TIMOTHY J. CORRIGAN
United States District Judge

k.
Copies to:
Counsel of Record